Carla Gowen McClurg, OSB #165144
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
620 SW Main Street, Room 213
Portland, OR 97205
Tel: (503) 326-7659
Email: carla.mcclurg@usdoj.gov

Attorney for Gail Brehm Geiger, Acting United States Trustee for Region 18

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Turning Leaf Homes V, LLC,<br><br>Debtor. | Case No.   17-31944-tmb11<br><br>**UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7** |

The Acting United States Trustee for Region 18, Gail Brehm Geiger (the "UST"), by and through Trial Attorney Carla Gowen McClurg, hereby moves the Court for an order dismissing this case, or, in the alternative, converting this case to one under chapter 7. Cause for dismissal or conversion exists because the manager of the debtor, Tracey Baron ("Baron"), failed to account for rents, caused an unauthorized and undisclosed post-petition transfer of the debtor's funds to another of his entities, filed a misleading monthly operating report for May/June 2017, has failed to file a monthly operating report for July 2017, and is engaged in gross mismanagement of the debtor.

## A.  <u>Factual Background</u>

Baron is the manager of and holds direct and indirect ownership interests in a number of business entities generally involved in the purchase of various types of residential real estate interests in the greater Portland Metropolitan Area, subject to lenders' encumbrances.   Baron's total inventory of properties consisted of approximately 80 as of August 2016.  The residential properties were held in the names of various entities, including RenX Group, LLC ("RenX"); Turning Leaf Homes, LLC ("Turning Leaf"); and Turning Leaf Homes III, LLC.

### 1.  Crimson Investment Group, LLC's Bankruptcy Case

In June 2016, after efforts on three residential properties to negotiate with lenders proved unsuccessful, deeds were signed  transferring interests in three properties from RenX and Turning Leaf to Crimson Investment Group, LLC ("Crimson") – an entity managed and controlled by Baron.  Turning Leaf holds 100 percent of the equity in Crimson; Baron and his wife, Michelle Baron ("Michelle"), each own 50 percent of the equity in Turning Leaf.

Crimson filed a voluntary chapter 11 petition on July 14, 2016, Case No. 16-32747-tmb11 (the "Crimson Case").  Baron was designated as the person required to perform the duties of Crimson as debtor-in-possession pursuant to an order entered on July 14, 2016.

Baron testified under oath at the meeting of creditors in the Crimson Case on August 16, 2016 (the "Crimson Meeting")[1] that he read and understood the United States Trustee's Operating Guidelines (the "Operating Guidelines").[2]  Baron also testified that he is the principal of Turning Leaf Management, Inc. ("Turning Leaf Management").  Articles of incorporation for Turning Leaf Management were filed with the Oregon Secretary of State on May 17, 2016.  In addition, Baron testified that he and his wife each own 50-percent interests in Turning Leaf

---

1  A true and correct copy of Crimson Meeting excerpts is attached hereto as "Exhibit 1."
2  A true and correct copy of the Operating Guidelines is attached hereto as "Exhibit 2."

**Page 2 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

Management.  According to Baron's testimony, Turning Leaf Management was formed to manage all of the properties owned by Baron-affiliated entities.

During the Crimson Meeting, Baron testified that rents for the Crimson properties would be deposited into Crimson's debtor-in-possession account.  Baron also testified that Turning Leaf Management would have no involvement in managing the Crimson properties unless Turning Leaf Management and Crimson entered into an agreement.

### 2.  Turning Leaf Homes IV, LLC's Bankruptcy Case

Articles of organization were filed with the Oregon Secretary of State for Turning Leaf IV, LLC ("Turning Leaf IV") on February 22, 2016.  Baron controls Turning Leaf IV as its sole member and manager.

On February 6, 2017, deeds were signed to convey interests in five residential properties and redemption rights in four properties to Turning Leaf IV.  That same day, Turning Leaf IV filed a voluntary chapter 11 bankruptcy petition, Case No. 17-30353-tmb11 (the "Turning Leaf IV Case").

On February 7, 2017, the Court entered an order designating Baron as the person to fulfill the duties of the debtor-in-possession for Turning Leaf IV.  Baron manages and controls Turning Leaf IV.  Baron testified under oath at the meeting of creditors on March 7, 2017 (the "Turning Leaf IV Meeting")[3] that he received and read the Operating Guidelines in the Turning Leaf IV Case and did not have any questions.[4]

Baron further testified during the Turning Leaf IV Meeting that all of Turning Leaf IV's income "goes into the . . . DIP account directly from the . . . tenant.  And we don't touch it.  It

---

3  A true and correct copy of Turning Leaf IV Meeting excerpts is attached hereto as "Exhibit 3."
4  More details regarding the Turning Leaf IV case are contained in the United States Trustee's Motion for an Order Dismissing Case, or, in the Alternative, Converting Case to Chapter 7 filed in the Turning Leaf IV Case on the same date as the date of this motion.

just stays there."  Baron also testified that: (1) Turning Leaf Management did not have a role with Turning Leaf IV at the time of the Turning Leaf IV Meeting; and (2) "everything is separate" as between his various entities and that "accounting's all done and you cannot commingle.  It doesn't go back and forth."

### 3.  Turning Leaf Homes V, LLC's Bankruptcy Case

Articles of Organization were filed with the Oregon Secretary of State for Turning Leaf Homes V, LLC ("Turning Leaf V") on May 17, 2017.  Baron is the sole member and manager of Turning Leaf V.

On May 19, 2017, Turning Leaf Management transferred $15,000 into Turning Leaf V's pre-petition bank account.  On or about May 19, 2017, Baron signed deeds, in front of a notary public, transferring interests in nine properties from entities related to Baron to Turning Leaf V. Delwayne and Laura Rassi also signed a deed transferring to Turning Leaf V their interest in real property located at 15081 SE Mt. Royale Court, Milwaukie, OR on May 19, 2017.

On May 23, 2017, Turning Leaf V filed a voluntary chapter 11 bankruptcy petition. Baron was designated as the person required to fulfill the duties of the debtor-in-possession in the Turning Leaf V case pursuant to a court order entered on May 24, 2017.  On May 25, 2017, the United States Trustee transmitted to Baron and Turning Leaf V's attorney a letter scheduling an interview with United States Trustee staff and including various attachments, including the Operating Guidelines.

Baron attended an initial debtor interview at the UST's Portland office on June 2, 2017, where the UST discussed with Baron Turning Leaf V's responsibilities as a debtor-in-possession. Also, on June 2, 2017, a deed was signed transferring real property located at 138 NE 22nd Avenue, Camas, WA (the "Camas Property") from Doug and Dianna Karkanen to Turning Leaf V.

Page 4 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

On June 8, 2017, $15,000 was transferred from the Turning Leaf V pre-petition bank account into the Turning Leaf V debtor-in-possession bank account. The next day, on June 9, 2017, Baron signed a counter check for $12,000 drawn on Turning Leaf V's debtor-in-possession account, which was deposited into an account held by Turning Leaf Management. Turning Leaf V did not obtain Court authority to transfer the $12,000 to Turning Leaf Management.

On June 5, 2017, Turning Leaf V filed schedules, statements and related documents, ECF No. 17 (the "Original Schedules and Statements"). Baron signed the Original Schedules and Statements under penalty of perjury. The Original Schedules and Statements listed interests in 13 parcels of real property (the "Turning Leaf V Properties"), including the Camas Property.

Information disclosed on the Original Schedules and Statements reflected that at least three of the Turning Leaf V Properties cannot be rented by Turning Leaf V because of the condition of the properties, including: 18797 Blueridge Drive, Oregon City, OR (large hole in the roof); 27660 SE Highway 224, Eagle Creek, OR (needs a new furnace, air system, a roof replaced, upgraded electrical, and lots of general cleanup); and 6506 SE Hemlock Street, Milwaukie, OR (house burned down). Turning Leaf V also cannot rent the real property located at 18901 Hilltop Road, Lake Oswego, OR (the "Lake Oswego Property") because Turning Leaf V only holds a 16.6% tenant-in-common interest.[5] The Original Schedules and Statements show that the nine other Turning Leaf V Properties are in need of extensive repairs.

---

5 Turning Leaf V filed a second amended Schedule A/B on July 25, 2017, ECF No. 46, to indicate that it holds the 16.6% in the Lake Oswego Property as a tenant in common and not a joint tenant.

**Page 5 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

The Original Schedules and Statements also reported: (1) on Schedule A/B that Turning Leaf V had $15,000 in its checking account on the petition date; and (2) on the Statement of Financial Affairs that the debtor did not transfer any money or property to any person outside the ordinary course of business.

On June 27, 2017, Baron testified under oath during the meeting of creditors in the Turning Leaf V case (the "Turning Leaf V Meeting")[6] that: (1) the Original Schedules and Statements were true, correct and complete; (2) he received, read, and understood the Operating Guidelines; (3) he capitalized Turning Leaf V by transferring $15,000 from Turning Leaf Management; (4) Turning Leaf Management had no agreements with Turning Leaf V; (5) he was personally managing the properties included in the Turning Leaf V bankruptcy estate; (6) there was only $3,000 in Turning Leaf V's bank account on the petition date and Schedule A/B incorrectly listed a balance of $15,000; (7) Turning Leaf V paid to purchase properties from other entities before the petition date; and (8) all of the inter-account transfers between Turning Leaf V and the transferring entities to purchase real property interests were completed pre-petition.

During the course of the Turning Leaf V Meeting, counsel for the UST asked a number of questions about the various properties listed on the Original Schedules and Statements. In response to questions about the property located at 2775 SW 107th Avenue, Portland, Oregon (the "107th Property"), Baron testified that the 107th Property was occupied by tenants paying $1,500 per month in rent. Baron testified that the tenants had paid rent for 2017 on a current basis through the date of the meeting and that the rents were Wells Fargo's collateral. When asked if the tenants paid rent on June 1, 2017, Baron testified that he would have to check, but, if

---

6 A true and correct copy of Turning Leaf V Meeting excerpts is attached hereto as "Exhibit 4."

**Page 6 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

rent was paid, it would be paid "directly to the account." Counsel for the UST explained to Baron that all rents must be paid to the bankruptcy estate. Counsel for the UST further requested that counsel for Turning Leaf V follow up on the cash collateral issue.

Baron further testified during the Turning Leaf V Meeting that he did not know if real property taxes were current on the Turning Leaf V Properties. Baron testified that his general business practice was to wait for the mortgage servicers of lienholders to pay the real property taxes. Turning Leaf V provided a summary to the UST showing that the annual real property tax obligations on the Turning Leaf V Properties in which there are no other interest holders total over $59,000. According to Turning Leaf V's summary, Clackamas County is owed real property taxes for the Lake Oswego Property in the amount of $15,429.46 for prior years and that the current year's assessment is $6,700.53.[7]

At the close of the Turning Leaf V Meeting, the UST requested that Turning Leaf V file amended schedules and statements to reflect Baron's testimony regarding: current tenants, the bank balance on the petition date, the purchase of real property interests by Turning Leaf V pre-petition, and adding additional creditors, including county tax authorities. The UST requested various documents at the close of the meeting, including a summary of the amount of real property taxes owed, bank statements showing the bank balance on the petition date, documentation of the capital infusion into Turning Leaf V and the source, and documentation of the payments by Turning Leaf V of the real property interests.

On July 10, 2017, Turning Leaf V filed amended Schedule A/B (the "Amended Schedule A/B"), Schedule E/F, Schedule G (the "Amended Schedule G"), and Statement of Financial

---

7  Turning Leaf V listed the Clackamas County Assessor as a creditor on the amended Schedule E/F filed on July 10, 2017 with a total claim of only $91.74.

**Page 7 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

Affairs (the "Amended SOFA"). The Amended Schedule A/B reported a bank balance on the petition date of $15,000 despite Baron's testimony that the balance in the account was $3,000. The Amended SOFA, in response to item 30, disclosed:

- Turning Leaf Homes received $5,000 total for interests in five properties purchased for $1,000 each on May 19, 2017;

- RenX received $4,000 total for interests in four properties purchased for $1,000 each on May 19, 2017;

- Turning Leaf Homes III, LLC received $1,000 total for the purchase of an interest in one property on May 19, 2017; and

- Michelle Baron received $1,000 total for the purchase of an interest in one property on May 19, 2017.

The Amended Schedule G reflected that only 5 of the 13 properties listed by Turning Leaf V were leased to tenants as of the petition date. The total monthly rents for the leases disclosed on Amended Schedule G were $7,700.

On August 4, 2017, Turning Leaf V provided to the UST some of the bank documents requested at the Turning Leaf V Meeting. The bank documents show that, on June 9, 2017, a counter check was drawn on the Turning Leaf V debtor-in-possession bank account in the amount of $12,000 and deposited into an account held in the name of Turning Leaf Management (the "Counter Check"). The Counter Check included the notation "5/22/17 transfer" and appears to have been signed by Baron. Baron did not seek the Court's permission for the post-petition transfer of $12,000.

Baron did not appropriately report the post-petition payment of $12,000 on the monthly operating report for May and June 2017 filed on July 27, 2017, ECF No. 45 (the "May/June

**Page 8 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

MOR"). Baron signed the May/June MOR under penalty of perjury. On form UST-17, Statement of Operations, page 12 of the May/June MOR, in response to question 1, the box "no" was checked indicating that Turning Leaf V had not sold, transferred, or otherwise disposed of any of the debtor's assets out of the ordinary course of the debtor's business. In response to question 5 on form UST-17, Baron did not report any significant events that may have an effect on the financial condition of Turning Leaf V or any events outside the ordinary course of business.

In addition to failing to disclose the post-petition transfer, the May/June MOR also provided misleading information regarding the receipt of rents and did not match information disclosed in the associated bank statements. Significantly, Turning Leaf V's ending bank balance as of June 30, 2017 was $3,000, but the May/June MOR reports that Turning Leaf V should have had $7,250 in its bank account as of June 30, 2017.[8]

Moreover, a comparison of the May/June MOR with Turning Leaf V's bank statements reveals another significant discrepancy. Although the May/June MOR reports post-petition gross revenue of $6,783 and collections of $4,250, no deposits were made into bank accounts held by Turning Leaf V other than the $15,000 capital contribution.[9] The Customer Balance Detail report provided by Turning Leaf V to the UST, Exhibit 6, page 24, further shows that the $4,250 in collections included $1,500 in rental income for the 107th Avenue Property. Turning Leaf V's bank statements do not reflect a deposit of any rent, including rent for the 107th Property. The Debtor Statement in Advance of Case Management Conference filed on June 29, 2017, ECF

---

8  A true and correct copy of the UST's analysis of Turning Leaf V's cash position reported on the May/June MOR, compared to its ending bank balance, is attached hereto as "Exhibit 5."
9  A true and correct copy of the May/June MOR, with the attachments and bank statements (redacted) that Turning Leaf V provided to the UST, is attached hereto as "Exhibit 6."

**Page 9 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

No. 30, represented that Turning Leaf V would not use rents from the 107th Property without Court authorization because there is an assignment of rent provision in the note in favor of the lender.

As noted in the UST's Motion for an Order Dismissing Case, or, in the Alternative, Converting Case to Chapter 7 filed in the Turning Leaf IV Case, the June 2017 monthly operating report for Turning Leaf IV reported cash of $28,419, but the bank statement provided to the UST for Turning Leaf IV showed a cash balance of $14,619.40 – a difference of $13,799.60. Baron signed the June 2017 monthly operating report for Turning Leaf IV under penalty of perjury.

On August 7, 2017, counsel for the UST emailed counsel for Turning Leaf V requesting an accounting for the disposition of the $12,000 transferred post-petition and information regarding what Turning Leaf V intended to do about the unauthorized post-petition transfer. Counsel for the debtor advised that he had asked that Turning Leaf Management return the $12,000 unless there was a valid reason for the transfer of the funds. To date, the UST has not received documentation confirming the return of the $12,000. The bank statement for Turning Leaf Management for June 2017 shows a negative balance as of June 30, 2017 of ($944.44).

On August 8, 2017, UST Bankruptcy Analyst and CPA, Tammy L. Combs ("Combs"), emailed counsel for Turning Leaf V and Turning Leaf IV and advised him of the discrepancies between the ending bank balances for June 2017 and the monthly operating reports. Combs asked counsel for Turning Leaf V and Turning Leaf IV to provide an explanation for the discrepancy and any documents that would explain the difference.

To date, the UST has not received a satisfactory or complete response. The UST had a conversation with the CPA for Turning Leaf IV and Turning Leaf V who confirmed there were

**Page 10 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

undeposited funds as shown on a supplemental financial statement provided for June 2017. The CPA advised that the undeposited funds had been returned to the estates as of mid-July 2017. To date, the UST has not received a monthly operating report or other supporting documents, such as bank statements, to confirm the return of the funds.

Also, to date Turning Leaf V has not filed its July 2017 monthly operating report (the "July MOR"). The July MOR was due on August 21, 2017. Counsel for the UST emailed counsel for Turning Leaf V about the July MOR on August 22, 2017 and was advised that it would be filed later that day.

### B. Legal Analysis

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 2100-1 of the United States District Court for the District of Oregon. This matter is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A) and (O). Pursuant to 11 U.S.C. § 307, the UST may raise, appear, and be heard on any issue in any case or proceeding under Title 11.

Section 1112(b) of the Bankruptcy Code provides that the court shall convert a chapter 11 case to one under chapter 7 or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, if the movant establishes "cause." The Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") expanded the definition of "cause" for relief under § 1112(b) and limited the court's discretion under section 1112(b) once the movant establishes cause. *See* 11 U.S.C. §§ 1112(b)(1), (b)(2). Prior to BAPCPA, section 1112(b) provided that a court "may" convert or dismiss a chapter 11 case for cause. *See In re Prods. Int'l Co.*, 395 B.R. 101, 108 (Bankr. D. Ariz. 2008).

Page 11 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

The Bankruptcy Code provides 16 specific, but non-exclusive, examples of cause in section 1112(b)(4). 11 U.S.C. § 1112(b)(4); *see In re Consolidated Pioneer Mortg. Entities*, 248 B.R. 368 (9th Cir. BAP 2000) (the list in section 1112(b) is illustrative rather than exhaustive). The Court may also "consider other factors as they arise, and use its equitable powers to reach the appropriate result in individual cases." *Id.*; *In re Brown*, 951 F.2d 564, 571 (3d Cir. 1991) *citing* S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5903; H.R. Rep. No. 595, 95th Cong. 1st Sess. 406 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6362.

1. **The Court should dismiss this case due to the substantial and continuing loss to and diminution of the estate.**

Section 1112(b)(4)(A) states that a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitute grounds to dismiss a chapter 11 bankruptcy case. In applying Section 11112(b)(4)(A) to specific cases, courts hold that "[t]he first part, loss and diminution, considers whether the debtor has suffered or continues to experience a negative cash flow, or, alternatively, declining asset values." *In re Wahlie*, 417 B.R. 8, 11 (Bankr. N.D. Ohio 2009); s*ee also In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (analyzing Section 1112(b)(4)(A) and holding that "[o]ne indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced"); *In re Westgate Properties*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) ("The first half of this equation is often met by showing that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief").

Turning Leaf V is in a negative cash-flow position. After a cash infusion of $15,000 and rental revenues booked (but apparently not deposited into Turning Leaf V's accounts), Turning Leaf V only has a bank balance of $3,000 after little over a month in bankruptcy.

Page 12 - **UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

"The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Wallace*, 2010 Bankr LEXIS 261, 2010 WL 378351 at *4 (Bankr. D. Idaho 2010) (quotations and citations omitted). "Rehabilitation is a different and much more demanding standard that reorganization." *Id*.

Baron's transfer of Turning Leaf V's funds to Turning Leaf Management, demonstrates that Turning Leaf V is not a stand-alone business. Rather, Baron's intercompany transactions show that Turning Leaf V is part of Baron's larger real estate portfolio. Turning Leaf Management's negative cash balance at the end of June 2017 after receiving $12,000 from Turning Leaf V shows that the overall portfolio is not performing and that Turning Leaf Management may not be financially able to repay the funds transferred to it post-petition.

Moreover, the unauthorized post-petition transfers and failure to explain the difference between cash balances reflected in the records and the cash in the bank account show a lack of respect by Baron for the bankruptcy process. Without appropriate financial controls and oversight, Turning Leaf V cannot continue to effectively do business or comply with its obligations as a debtor-in-possession.

In light of Turning Leaf V's cash position and Baron's poor oversight and financial controls, Turning Leaf V does not have realistic business prospects. Moreover, the Turning Leaf V Properties are largely in disrepair. The $4,379.00 in net rental income that has been reported on the May/June MOR and not deposited will not be sufficient to pay real property taxes when they come due or to fund renovations and repairs to make the Turning Leaf V Properties rentable or saleable. Turning Leaf V has also failed to explain whether financial controls will be in place to prevent additional losses to the bankruptcy estate. Therefore, the Court should dismiss this

case due to the substantial and continuing loss to and diminution of the estate.

**2. The Court should dismiss this case due to the Debtor's failure to timely provide documents and information to the UST.**

Pursuant to section 1112(b)(4)(H), the "failure timely to provide information or attend meetings reasonably requested by the United States Trustee" constitutes cause for dismissal. To date, Turning Leaf V has failed to timely and satisfactorily respond to the UST's request for information and documents regarding rents and the disparity between the cash balance reported on the May/June MOR for Turning Leaf V and the cash in the bank account at the end of the period. Turning Leaf V has also failed to provide the UST with documents evidencing the return of the $12,000 to Turning Leaf V. Accordingly, the Court should enter an order dismissing this case due to Turning Leaf V's failure to timely provide information reasonably requested by the UST.

**3. The Court should dismiss this case due to the Debtor's failure to file a complete and accurate monthly financial report.**

Section 1112(b)(4)(F) establishes that an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" constitutes cause for dismissal. The importance of timely and accurate reporting by a chapter 11 debtor-in-possession cannot be understated, as set forth in *In re Whettten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012):

> Monthly reports and the financial disclosures contained within them "are the life-blood of the Chapter 11 process" and are more than "mere busy work." *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's

> ability to reorganize.  Thus, non-compliance is not a "mere
> technicality."

"'Filing a piece of paper is meaningless if the content is inaccurate, misleading, or wrong, thus the content of these documents is always relevant.'"  *In re Hoyle*, 2013 Bankr. LEXIS 420; 2013 WL 210254 at *35 (Bankr. D. Idaho 2013) (quoting *In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009)).  Thus, the filing of incomplete and inaccurate monthly financial reports constitutes cause for dismissal or conversion.  *Id.*

In this case, the May/June MOR did not appropriately report the post-petition transfer of $12,000 to Turning Leaf Management.  In addition, the cash balance reported on the May/June MOR does not match Turning Leaf V's bank statements.  Accordingly, the Court should dismiss this case due to Turning Leaf V's failure to file a complete and accurate monthly financial report and due to Turning Leaf V's failure to timely file the July MOR.

### 4. The Court should dismiss this case due to the Debtor's unauthorized use of cash collateral that is substantially harmful to one or more creditors.

Section 1112(b)(4)(D) provides that the unauthorized use of cash collateral substantially harmful to one or more creditors constitutes cause for dismissal.  *See In re Visicon S'holders Trust*, 478 B.R. 292, 314 (Bankr. S.D. Ohio 2012) ("'Substantial' is defined as 'considerable in importance, value, degree, amount, or extent,' . . . and the payment of expenses for which no explanation was given unequivocally rises to a level of being 'considerable in importance, value, degree, amount, or extent.'") (citation omitted). In this case, Turning Leaf V has apparently used or disposed of the rent from the 107th Property without Court authorization.  Turning Leaf V reported receipt of rent on the May/June 2017 MOR from the 107th Property but did not deposit rent.  Such "payment of expenses for which no explanation was given" is "substantial" in its harm to creditors and "substantial" in its disregard for the integrity of the bankruptcy process.

**Page 15 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

*Visicon S'holders*, 478 B.R. at 314. *See also In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio

Jan. 8, 2009) (failure to account for use of cash collateral "not only . . . substantially harm[s] the

Creditor, . . . who had no way of knowing the disposition of its assets, but [exhibits] utter

disregard of the bankruptcy process . . . [and] the Bankruptcy Code's equitable nature.").

Turning Leaf V's unauthorized use of cash collateral is substantially harmful to at least

one creditor. Cause therefore exists to dismiss this case and the Court should enter an order

dismissing it.

### 5. The Court should dismiss this case because of Baron's gross mismanagement.

Debtors are debtors-in-possession of their chapter 11 estate. As such, they owe fiduciary

duties to their creditors and are obligated to follow the Bankruptcy Code and Rules. *See, e.g.* §§

1106, 1107 and Fed. R. Bankr. P. 2015 (delineating the duties of chapter 11 debtors-in-

possession, including filing periodic reports of business operations); *In re Sal Caruso Cheese,*

*Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989) ("As a fiduciary, the debtor is obligated to

protect and conserve property in its possession, as well as to provide voluntary and honest

disclosure of financial information—a reasonable *'quid pro quo'* for its temporary relief from

substantial financial obligations.") (citations omitted).

Section 1112(b)(4)(B) provides that gross mismanagement of the estate constitutes cause

for dismissal, conversion, or other action by the court. *In re Prods. Int'l Co.*, 395 B.R. 101, 110-

111 (Bankr. D. Ariz. 2008). Bankruptcy courts have found that a wide variety of conduct can

establish gross mismanagement, including: the failure to attempt to recover property arguably

belonging to the estate; failure to justify expenses, comply with financial reporting requirements,

and keep accurate accounting records leading to a lack of control over estate cash; and failure to

follow the Bankruptcy Code and obtain the Court's approval for post-petition borrowing, paying

**Page 16 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

pre-petition debts, and paying professionals. *In re Lodge at Big Sky, LLC*, 2011 Bankr. LEXIS 2296, 2011 WL 2358146 (Bankr. D. Mont. 2011); *Visicon S'holders*, 478 B.R. at 309; *In re Wallace*, 2010 Bankr. LEXIS 261, *15-*19 (Bankr. D. Idaho Jan. 26, 2010).

Baron has grossly mismanaged the Turning Leaf V estate. During Turning Leaf V's short time as a debtor-in-possession, rents have not been deposited into Turning Leaf V's account and Turning Leaf V has transferred $12,000 to Turning Leaf Management without Court authorization. Baron thereafter filed a monthly operating report that did not clearly disclose the unauthorized post-petition transfer and that reported a cash balance that did not match related bank statements. Baron has failed to explain the discrepancies between the monthly operating report and bank statements, failed to account for the rents, and failed to advise whether Turning Leaf Management will return the $12,000 to Turning Leaf V.

Baron's gross mismanagement of Turning Leaf V is not a product of his failure to understand bankruptcy requirements. Baron has substantial bankruptcy experience in two other recent chapter 11 cases.

Baron rec testified that he received the UST's Operating Guidelines in the Crimson, Turning Leaf IV, and Turning Leaf V cases. The Operating Guidelines clearly explain the debtor-in-possession's obligations to file complete and accurate monthly financial reports; maintain adequate insurance coverage for estate property; keep complete and accurate books and records; and obtain court approval before engaging in certain transactions, such as making a payment on pre-petition debt or selling an asset outside the ordinary course of the debtor's business. A number of the guidelines echo Bankruptcy Code and Rule provisions. *See e.g.* 11 U.S.C. §§ 363, 364, 1106, 1107; Fed. R. Bankr. P. 2015, 4001, 6004.

**Page 17 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

Baron demonstrated his knowledge of the duties of a debtor-in-possession to account for estate monies and to employ professionals when he testified during the Crimson Meeting that all rents received in the Crimson Case would be deposited into Crimson's debtor-in-possession bank account and that Turning Leaf Management would have no involvement in managing Crimson's properties unless Turning Leaf Management and Crimson entered into an agreement.

Baron further demonstrated his knowledge of bankruptcy requirements when he testified during the Turning Leaf IV Meeting that all of Turning Leaf IV's income "goes into the . . . DIP account directly from the . . . tenant;" that he does "not touch" the funds; that "everything is separate" as between his various entities; and that "accounting's all done and you cannot commingle . . . . [i]t doesn't go back and forth."

Baron has intentionally and knowingly disregarded his obligation as the manager of Turning Leaf V to deposit rents, to account for the disposition of all estate funds, to file complete and accurate monthly financial reports, and to obtain Court approval before transferring estate funds outside the ordinary course of business. The Court should therefore dismiss or convert this case due to Baron's gross mismanagement of the estate.

**6. Dismissal is in the best interests of creditors and the estate.**

Pursuant to section 1112(b)(1), once cause has been established, the court must determine whether conversion to chapter 7 or dismissal is "in the best interests of creditors and the estate ... unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors or the estate." In this case, dismissal is in the best interests of creditors and the estate.

Conversion to chapter 7 would not be beneficial to the estate or to creditors. The Turning Leaf V Properties are all over-encumbered. Many of the Turning Leaf V Properties are in need

**Page 18 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

of major repairs or renovation before they can be sold or rented. Turning Leaf V has very little cash in the bank to fund ongoing expenses and insufficient cash to fund any major repairs or renovation. There does not appear to be any value for a chapter 7 trustee to realize in administering the case. *See Rand v. Porsche Fin. Servs. (In re Rand)*, 2010 Bankr. LEXIS 5076, 2010 WL 6259960, *10 n.14 (B.A.P. 9th Cir. Dec. 7, 2010) (citing 7 Collier on Bankruptcy ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)) (noting that one factor weighing in favor of dismissal, as opposed to conversion, is the inability "of the trustee in a chapter 7 case to reach assets for the benefit of creditors.").

Additionally, appointment of a chapter 11 trustee would not benefit the estate or creditors. There are insufficient funds in the estate to fund major repairs or renovations in order to sell or rent the Turning Leaf V Properties to generate a return to creditors. Moreover, the estate does not have sufficient funds to pay the administrative costs to continue in chapter 11 with a trustee.

Dismissal of this case would allow creditors to pursue their remedies to foreclose or seek other remedies. The Court should therefore dismiss this case because dismissal would be in the best interests of creditors and the estate.

### C.     Conclusion

Turning Leaf V has failed to satisfy its fiduciary obligations as a debtor-in-possession even though its manager, Baron, has substantial bankruptcy experience. Cause therefore exists to dismiss or convert this case, and dismissal is in the best interests of creditors and the estate. Accordingly, the Court should enter an order dismissing this case.

/  /  /

/  /  /

**Page 19 - UNITED SATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-31944-tmb11    Doc 54    Filed 08/25/17

DATED this 25th day of August, 2017.

Respectfully submitted,
GAIL BREHM GEIGER
Acting United States Trustee for Region 18


/s/ Carla Gowen McClurg
CARLA GOWEN McCLURG, OSB #165144
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2017 I served a copy of the foregoing **UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7** by mailing a copy of this document, by United States first class mail, postage prepaid, addressed to the following:

J.P. Morgan Mortgage Trust 2006-A7,
Mortgage Pass-Through Certificates,
U.S. Bank National Association, As Trustee
Robertson, Anschutz & Schneid, P.L.
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487

Turning Leaf Homes V, LLC
6915 SW MACADAM AVE
Suite 300
Portland, OR 97219

GAIL BREHM GEIGER
Acting United States Trustee for Region 18

/s/ Carla Gowen McClurg
CARLA GOWEN McCLURG, OSB #165144
Trial Attorney